UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JINJER ROSALINE NUTTER,

      Plaintiff,

v.                      Civil Action No. 2:23-cv-00365

M. PAUL MARTENEY,

      Defendant.

## MEMORANDUM OPINION AND ORDER

      This case originates from an automobile accident in which plaintiff was injured and then engaged an attorney who filed suit in state court on her behalf but neglected to pursue it, as a result of which the lawsuit was dismissed, unknown to the plaintiff for a year thereafter.

      This suit was instituted pursuant to the court's diversity jurisdiction under 28 U.S.C. § 1332, by plaintiff, then a citizen and resident of Buncombe County, North Carolina, through her attorney, Michael Crim ("Mr. Crim"), against the defendant attorney, then a citizen and resident of Wood County, West Virginia.  The amount in controversy is alleged to exceed the sum of or value of $75,000.

After defendant was properly served and failed to appear in this matter, and upon plaintiff's motion through Mr. Crim, the clerk entered default against defendant on June 28, 2023, which was followed by plaintiff's motion for default judgment and the jury trial held on August 13, 2024 for the purpose of determining damages.

Mr. Crim, along with plaintiff and her parents, attended the trial, at which the plaintiff and her mother were the only witnesses.  Defendant did not appear then or, though noticed repeatedly, at any other time.

At the trial, Mr. Crim called plaintiff, Jinjer Nutter, to testify and admitted into evidence six photos of the automobile which were taken after the accident, the police accident report, the state court complaint filed by defendant regarding plaintiff's car accident case, the circuit court Notice of Intent to Dismiss for defendant's failure to prosecute, the circuit court Order of Dismissal, plaintiff's medical bills that totaled $20,614.31 in their entirety, a single sentence from defendant's stipulation in a lawyer disciplinary action initiated against him in state court wherein he evaluated the worth of plaintiff's state case as $40,000, plaintiff's medical records, and plaintiff's MRI and CT scan records.  Mr. Crim then called the plaintiff's mother, Joann

Nutter, to testify and, during her testimony, admitted into evidence an additional MRI report.

The evidence offered during the trial showed that plaintiff's medical bills totaled $20,614.31 and her physical ailments consisted of neck pain, headaches, and jaw pain which she treated through chiropractic care. Plaintiff also testified about the ways defendant's inaction in the underlying automobile accident has impacted her since she learned about the state court dismissal.

After Mr. Crim presented the aforementioned evidence and concluded his closing argument, the jury instructions were given and the jury was sent to deliberations. The instructions advised the jury that the plaintiff and the defendant had agreed that the defendant would receive for his services 25% of the recovery by settlement or trial in the state court case, and that the jury should reduce her loss of proven damages from the state court case by one-fourth.

The jury returned a verdict of $750,000 in total compensatory damages which the jury specified as including medical expenses in the amount of $300,000, following which the jury was dismissed.

For the reasons explained below, the court determines that the jury award is contrary to the clear weight of the evidence, due in substantial part to the cumulative errors committed by or on plaintiff's behalf that occurred during trial and resulted in the jury's bias or confusion. As a result, a new trial is necessary pursuant to Rule 59(d) of the Federal Rules of Civil Procedure.

### Standard of Review

The court has authority to order a new trial on its own initiative: "No later than 28 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion . . . . [T]he court must specify the reasons in its order." Fed. R. Civ. P. 59(d); King v. McMillan, 594 F.3d 301, 314 (4th Cir. 2010) (A district court may order a new trial if it finds that "the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice") (internal citations omitted). The jury verdict here is both against the clear weight of the evidence and, if upheld, would result in a miscarriage of justice.

"A trial court's evaluation of an award of compensatory damages is less searching than its evaluation of an award of punitive damages." Id. at 314. The court has

4

discretion to determine whether a jury's award of compensatory damages is against the clear weight of the evidence.  <u>Id.</u>

Regarding Rule 59(d), the Fifth Circuit has summarized the purpose and circumstances under which a district court should order a new trial:

> Rule 59(d) is designed to empower the trial judge to correct an injustice occasioned, primarily, by a jury verdict. The error in the verdict should be, except in the rarest of cases, apparent immediately upon return of the verdict. In those instances, the court may act, but it must exercise its authority with dispatch, within the limited period established by the rule.

<u>Tarlton v. Exxon</u>, 688 F.2d 973, 978 (5th Cir. 1982).

Absent a constitutional challenge to the amount of a jury's damage award, <u>see</u> <u>BMW of N.A. v. Gore</u>, 517 U.S. 559 (1996) (holding "grossly excessive" punitive damage award violates the Fourteenth Amendment's Due Process Clause), a federal district court reviews damages awards by applying the state's substantive law regarding damages under standards imposed by federal procedural law.  <u>See</u> <u>Atlas Food Sys. and Serv., Inc. v. Crane Nat. Vendors, Inc.</u>, 99 F.3d 587, 596 (4th Cir. 1996).  Because the doctrine of <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938), "precludes a recovery in federal court significantly larger than the recovery that would have been tolerated in state court," a district court sitting in diversity must consider granting a new trial on the basis of an allegedly

unsupported jury compensatory damage award under state law
standards.  Konkel v. Bob Evans Farms Inc., 165 F.3d 275, 280
(4th Cir. 1999) (citing Gasperini v. Ctr. For Humanities, Inc.,
518 U.S. 415, 438 (1996)).

        The West Virginia approach instructs that "[c]ourts
must not set aside jury verdicts as excessive unless they are
monstrous, enormous, at first blush beyond all measure,
unreasonable, outrageous, and manifestly show jury passion,
partiality, prejudice or corruption."  Addair v. Majestic
Petroleum Co., Inc., 160 W. Va. 105, 232 S.E.2d 821 (1977).
With regard to personal injury cases, a jury verdict should not
be set aside unless it is unsupported by the evidence:

> In a civil action to recover damages for personal
> injuries, the amount which the plaintiff is entitled
> to recover being indeterminate in character, the
> verdict of the jury may not be set aside by the trial
> court or by this Court on the ground that the amount
> of the verdict is excessive, unless the verdict in
> that respect is not supported by the evidence or is
> such that the amount thereof indicates that the jury
> was influenced by passion, partiality, prejudice or
> corruption, or entertained a mistaken view of the
> case.

Syl. Pt. 18, Jordan v. Bero, 158 W. Va. 28, 59, 210 S.E.2d 618,
638 (1974) (quoting Syllabus, Sargent v. Malcomb, 150 W.Va. 393,
146 S.E.2d 561 (1966)).

## Analysis

Applying these standards to the verdict returned by the jury, the court concludes that the calculation of damages had no rational basis or relationship to the evidence presented, and the award is outrageous.  Specifically, the jury's calculation of $300,000 in medical expenses when the evidence proved a certain sum of $20,614.31 demonstrates that their calculation of total damages of $750,000 was not based on the evidence presented to them.

Immediately after the court reviewed the verdict and the clerk read the verdict in the courtroom, the court excused the jury to the deliberation room and noted to counsel that the verdict was beyond the realm of reality and the medicals at $300,000 was simply incredible.  The following exchange between the court and Mr. Crim ensued:

> THE COURT: Please be seated.
>
> The verdict is so beyond the realm of reality that the question is whether or not the matter should be resubmitted to the jury for further consideration.
>
> And I would ask counsel what your view might be?
>
> MR. CRIM: Your Honor, my view would be, as far as the total verdict, I don't know what that's something to take away from the province of the jury.

I do think that there is an issue with regard to the meds. And clearly, here is — you can't come back with $300,000 in meds.

THE COURT: Well, if the proof in the case for medicals was $20,600 and either 41 or 14, whichever it was, and 31 cents, and the jury has concluded that it's $300,000, it's simply incredible. And it, of course, affects the overall verdict as well.

And the question, again, is whether or not to proceed with this jury. And it seems to me that it's fruitless to do so.

MR. CRIM: Well, I think the court should —

THE COURT: I can assure you that the court is not going to allow the medical expenses of $300,000 in a case where only $20,000 or so was proven.

MR. CRIM: And I agree with that, but I think the jury should be sent back with that jury instruction again that says, you have to state what the medical expenses were that were proven. Clearly $300,000 isn't even in evidence. I agree with that.

THE COURT: Well. That inevitably affects the entirety of the original verdict as well.

MR. CRIM: Yes. My suggesting would be to re-read the instructions to them and send them back again.

THE COURT: As I reflect on it, I think that probably the only practical thing to do is to relieve this jury and simply to have the Court sua sponte to act on the verdict. And perhaps it will merit a retrial.

MR. CRIM: The only other suggestion I would have, Your Honor, is, like I say, re-read the instructions, send them back, and if they come back with another verdict of this type, the Court can reduce it to what the Court thinks is appropriate.

I mean, I could understand the top number,
because, you know, that is within their province
to do.  I think they're confused with what to do
with medicals.

THE COURT: The Court is going to excuse the jury.

Ask them back in.

ECF 34 at 4:21-25; 5:1-25; 6:1-20.

Such an extraordinary award is indicative of the jury bias or confusion contemplated by the Fourth Circuit in <u>King</u> and the West Virginia Supreme Court of Appeals in <u>Addair</u> and <u>Jordan</u>. In his exchange with the court, Mr. Crim even acknowledged that the jury must have been confused to reach such a result as to the medicals.

To understand how the jury became biased or confused, the court considers the highly significant errors that occurred during the trial that cumulatively impacted the jury and tend to explain their damages calculations.  The errors include:

1) the plaintiff's statement and her mother's statement
by implication, about inadmissible insurance
information,

2) the plaintiff's testimony that she believed her
case to be worth $108,000 in damages, and

3) Mr. Crim's statements during closing arguments
suggesting a damages formula to the jury.

1. <u>References to Insurance Offer</u>

While plaintiff was on the witness stand, Mr. Crim inquired about the neck pain and headaches that plaintiff testified began as a result of the car accident.  He then asked her to "[t]ell the jury how you progressed, and the treatments that you've received to date."  In a narrative response, plaintiff stated, <u>inter</u> <u>alia</u>,

> And it was just, like, ongoing. And which is why we, you know, we took action with him because of these issues, and we didn't feel like what the — what the insurance wanted to give us was just for what had happened.  We felt like — you know, I felt like I was owed more for the things that I was experiencing.

ECF 30 at 4: 8-14.

The court took no action at that point in order not to draw further attention to the reference to insurance.  Later, when Mr. Crim approached the bench for another purpose, the court admonished him:

> The grand mistake has already been made in this case by reference to insurance.  You need to instruct your witness absolutely not to mention that again.  And if you have other witnesses, before they take the stand, tell them not to breathe one word about that.

ECF 31 at 6:2-6.  Thereupon, Mr. Crim and the plaintiff had an off-the-record discussion.

Mr. Crim next called the plaintiff's mother to the stand.  After the mother was sworn but before she was seated,

the court suggested, "Mr. Crim, you may need to have the same conversation with this witness."  ECF 32 at 3: 19-20.  Mr. Crim and the plaintiff's mother had an off-the-record discussion. <u>See</u> <u>id.</u> at 24-25.  Still, when asked to describe the impact and residual effects the accident had on her daughter, plaintiff's mother stated that those effects are the reason she encouraged her daughter

> to go ahead and, like, actually try to get some more out of the offering from what was previously noted and stuff, but nothing happened with it.

<u>Id.</u> at 6:7-10.  Though she did not speak the word "insurance," her statement again suggested to the jury the existence of an insurance offer.

Federal Rule of Evidence 411, like West Virginia's Rule 411, excludes insurance evidence that has been offered to prove negligence or wrongful conduct.  Rule 411 states in full:

> Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control.[1]

---

[1] West Virginia Rule of Evidence 411 adds, "if controverted" to the phrase "proving agency, ownership, or control" and the following additional sentence:

__Id.__  The Fourth Circuit has clarified that, where insurance evidence is not excluded under Rule 411, it may well be excluded under another rule:

> While such evidence may not have been strictly prohibited by Federal Rule of Evidence 411, as it was not offered to show that Appellees "acted negligently or otherwise wrongfully," the court was within its discretion to find that the evidence's probative value was substantially outweighed by the danger of unfair prejudice.

__Gentry v. E. W. Partners Club Mgmt. Co. Inc.__, 816 F.3d 228, 240 (4th Cir. 2016) (__citing__ Fed. R. Evid. 403).  While Rule 411 bars the admission of insurance evidence when it is offered to show negligence or wrongful conduct, it may still be inadmissible under Rules 401 and 403.

     The West Virginia Supreme Court of Appeals has established an approach to analyze the admissibility of insurance information that mirrors that of the Fourth Circuit. __See__ __Reed v. Wimmer__, 195 W. Va. 199, 205 465 S.E.2d 199, 205 (1995).  In __Reed__, the court sought to "clarify the contours and

---

> This evidence may be admissible against a party that places in controversy the issues of the party's poverty, inability to pay, or financial status.

> The added sentence "clarifies that evidence of liability insurance may be admissible if an opposing party presents evidence of inability to pay or places the party's financial status at issue in a trial." __See__ __id.__, comment on Rule 411.  The portion of the rule that does not match the federal rule is irrelevant to the present matter.

scope of Rule 411 of the West Virginia Rules of Evidence." <u>Id.</u>
In doing so, the court explained the logic of the rule:

> The prohibition in Rule 411 is based on the assumption
> that jurors who are informed about the insurance
> status of a party may find that party liable only
> because the liability will be cost-free to the party,
> or that jurors will increase the amount of damages in
> that only an insurance company will be affected
> adversely.

<u>Id.</u>

As did the Fourth Circuit in <u>Gentry</u>, the West Virginia
Supreme Court in <u>Reed</u> determined that insurance evidence not
barred by Rule 411 — that is, evidence offered for purposes
other than negligence and wrongful conduct — is not
automatically admissible but should be analyzed under Rules 401
and 403. <u>Id.</u> Specifically, after ascertaining the legitimate
purpose for which the insurance evidence was offered, "if
evidence of insurance coverage is introduced for purposes other
than negligence and wrongful conduct, Rule 411 does not bar its
admission." <u>Id.</u>

If, as here, the reference to insurance is made for a
purpose other than negligence or wrongful conduct, then the
inquiry is one of relevancy. <u>Id.</u> To determine relevancy,
"the trial court must find the evidence has sufficient probative
value to meet the standard of Rule 401. If it does not, Rule
402 mandates its exclusion." <u>Id.</u> If the statement survives the

402 analysis, then "[t]he third step involved in the equation is Rule 403."  Id.

Plaintiff's testimony that she declined to accept "what the insurance wanted to give [her]" because she "felt like [she] was owed more" was not offered to prove negligence or wrongful conduct, thus it was not excluded under Rule 411.[2]  The statement was marginally relevant under Rule 401 because it tended to show that someone was liable to plaintiff in the underlying car accident matter.  It was inadmissible under Rule 403 because it lacked probative value and was unfairly prejudicial in that it only served to encourage the jury to award higher damages.  For the same reasons, the mother's statement was not offered to prove negligence or wrongful conduct, and it was unfairly prejudicial under Rule 403.

The longstanding rule regarding inadmissible insurance testimony that is volunteered by a witness requires that the testimony be "promptly stricken out" but it does not alone constitute reversible error.  Jupollo Pub. Serv. Co. v. Grant, 42 F.2d 18, 19 (4th Cir. 1930).  Rule 105 of the Federal Rules of Evidence reflects this solution to inadmissible testimony

---

[2] Nothing in the record or in the evidence presented at trial provides information about the insurance policy such as who carried the policy or what offer the plaintiff claims she declined.

14

presented to the jury: "If the court admits evidence that is admissible against a party or for a purpose — but not against another party or for another purpose — the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly."  Fed. R. Evid. 105.

Since the defendant did not appear, he was not present to object or request a limiting instruction from the court.  It is incumbent upon a party to request a limiting instruction under Rule 105, and a failure to do so generally precludes review of the question absent "serious prejudicial error in the conduct of a trial [that] affects life or liberty . . . ." United States v. Espinoza, 641 F.2d 153, 167 (4th Cir. 1981) (citing Cleaver v. United States, 238 F.2d 766 (10th Cir. 1956).

Nevertheless, without an objection from the defendant, the court sought to restrict the inadmissible evidence without drawing attention to the jury by privately admonishing Mr. Crim and instructing him to counsel his witnesses accordingly. Thereafter, plaintiff's mother injected an additional reference that may have related to the insurance offer by saying that she encouraged her daughter to try to get some more out of the offering.

The inadmissible statements by plaintiff and her mother, even if innocently given, likely contributed substantially to the bias and confusion of the jury.

2. **Plaintiff's Statement about the Worth of her Case As $108,000.**

Plaintiff stated in her testimony before the jury, in direct response to a question by her counsel, that she had believed her case to be worth $108,000. The following exchange occurred between the plaintiff and Mr. Crim:

> BY MR. CRIM:
>
> Q: In the limited discussions that you had with Mr. Marteney, did he ever tell you what he thought the case was worth?
>
> A: He had told me that he thought it was worth $40,000.
>
> Q: And did you agree with that?
>
> A: No, not at the time. I had thought it was worth much more than that. But he felt it was 40.
>
> Q: What did you think it was worth?
>
> A: At that time, $108,000.

ECF 31 at 3:12-20.

It is unclear how plaintiff determined the number $108,000. Under West Virginia law, proof of damages cannot be sustained by mere speculation or conjecture. Syl. Pt. 1,

16

**Spencer v. Steinbrecher**, 152 W. Va. 490, 496, 164 S.E.2d 710, 715 (1968) (**citing Newman v. Robson & Prichard**, 86 W. Va. 681, 681, 104 S.E. 127, 128 (1920) (although the plaintiff "sw[ore] that his business was worth as much as $2,400.00", there was no "data upon which the jury could ascertain the damages. The jury were not allowed to surmise or guess at the amount. Compensatory damages must be fixed with reasonable certainty."); **see also Miller v. Allman**, 240 W. Va. 438, 456, 813 S.E.2d 91, 109 (2018). Indeed, where the plaintiff bears the burden of establishing a value, "the burden is not met by her unsupported testimony that she 'imagined' it was worth a certain amount." Syl. Pt. 3, **Spencer**, 152 W. Va. at 490, 164 S.E.2d at 712 (referencing a plaintiff's testimony about her imagined valuation of her car after a car accident).

A jury verdict must be supported by the evidence. **See Jordan**, 158 W. Va. at 31, 210 S.E.2d at 623. Noting that plaintiff's statement was unsupported by evidence, the court instructed the jury to disregard it:

> Ladies and gentlemen, while we are on this subject matter, I'll mention one thing, as well. The witness has stated what she believes the worth of the case to be, the figure of which was $108,000. The court is directing the jury to completely disregard that figure. It's quite something else for counsel for the defendant to admit that the worth of the case is a certain figure, but it's not for the plaintiff to request the jury to find any particular number. And

```
          so you will completely disregard the witness'
          testimony in that respect.  I'm sure that it was
          innocently given, but it is to be disregarded.
```

ECF 31 at 10:9-21.

The plaintiff's suggestion of this fixed amount was plainly improper and could have been one of the factors that influenced the jury to return the verdict received.

The court's instruction could not fully undo the error, and this statement, along with the other errors related herein, doubtless contributed to the jury's confusion and bias that led to its unsupportable damages calculation.

3. <u>Closing Argument</u>

During closing argument, Mr. Crim impermissibly suggested damages amounts and calculations for the jury to employ to reach its damages total.  He first stated that he could not suggest the amount of damages the jury should award to the plaintiff, but he then suggested that the defendant might have undervalued plaintiff's case at $40,000 because defendant may have been an inexperienced attorney.  By this statement, Mr. Crim impermissibly suggested a minimum award from which it could be expected that the jury would consider an equal amount or an upward deviation.

On this point, Mr. Crim stated:

You know, I think one of the primary factors to
think about is Mr. Marteney's admission as to what he
thought the value was.  And you're going to get
instructions – the Court is going to give you
instructions that talk about the credibility and
witnesses, and what you have.  While he's not a
witness, you know, you certainly can consider the
credibility of him saying, well I think it was a
$40,000 case.  And maybe he had a reason to say that.
Maybe he didn't.  Maybe he's not very experienced in
the practice of law.  I don't know.  But that was what
he said.

You have to determine whether that's right,
wrong, whether the number is higher or whether the
number is lower.  I can't do that for you.  I can't
suggest what that number should be.  So that's solely
within your province.

I would tell you, you heard testimony from my
client that Mr. Marteney said it was a $40,000 case
based on what he believed was $13,000 in medical
treatment.

ECF 33 at 5:5-21.

Mr. Crim then reiterated to the jury that, in their

calculation of damages,

And there is no mathematical formula for the
number.  I wish I could sit here and tell you, you
know, ten times your medicals or ten times your
special damages.  I can't, because there is no
formula.  You have to decide.

Id. at 6:18-21.

Mr. Crim's suggestions to the jury about the value of

the case and a formula to calculate damages constitute

reversible error under West Virginia law:

In an action for personal injuries, an argument of
counsel to the jury based on a mathematical formula,

19

or fixed-time basis, suggesting a money value for pain
and suffering, is not based on facts, or reasonable
inferences arising from facts, before the jury, and
constitutes reversible error.

Syl. Pt. 5, <u>Crum v. Ward</u>, 146 W. Va. 421, 421, 122 S.E.2d 18, 20

(1961); <u>see</u> <u>also</u> <u>Miller v. Allman</u>, 240 W. Va. 438, 454, 813

S.E.2d 91, 107 (2018).  The West Virginia Supreme Court has

further cautioned that in any case in which a jury is charged

with the responsibility to calculate damages, "counsel generally

must be careful that closing remarks are supported by the

evidence and that they do not unduly emphasize units of time and

relate specific dollar amounts to them."  <u>Ilosky v. Michelin</u>

<u>Tire Corp.</u>, 172 W. Va. 435, 448, 307 S.E.2d 603, 616 (1983).

By suggesting the ten-times "medicals" or ten-times

"special damages" formula to the jury, Mr. Crim undertook to

relate specific dollar amounts.  There was no basis for either

formula suggested by Mr. Crim, but it nevertheless suggested to

the jury members that they could multiply any medical expenses

or special damages award by an arbitrary number, say, by ten, to

reach an ultimate damages award for the plaintiff.


## Conclusion

The multiplicity of unusually serious plaintiff errors

in a one-day jury trial where there was no defense present to

object has resulted in a jury verdict that is patently absurd and, if upheld, would constitute a clear miscarriage of justice.

Pursuant to the foregoing, the court rejects the jury verdict awarding $750,000 in total damages consisting of $300,000 in medical damages as against the clear weight of the evidence presented at trial.

For these reasons, under Rule 59(d) of the Federal Rules of Civil Procedure, the court ORDERS a new trial solely on damages. The new trial is scheduled for 10:00 a.m. on October 29, 2024.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: September 10, 2024

John T. Copenhaver, Jr.
Senior United States District Judge